Mario Iskander, SBN #327025
JUSTICE LAW GROUP
1111 N. Brand Blvd Suite 308
Glendale CA 91202
Tel. (240) 439-1970
Email mario@iskanderlaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IRANPROUD, LLC, a Washington limited liability company; PROUD HOLDING INC., an Ontario corporation; PROUD HOLDING LLC, a Colorado limited liability company; and NATIONWIDE TELECOM INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>GODADDY.COM, LLC, a Delaware limited liability company; GODADDY.COM, INC., an Arizona corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. ________________<br><br>**COMPLAINT FOR:**<br><br>(1) Breach of Contract;<br>(2) Breach of the Implied Covenant of Good Faith and Fair Dealing;<br>(3) Conversion;<br>(4) Fraudulent Misrepresentation;<br>(5) Fraudulent Concealment;<br>(6) Violation of 42 U.S.C. § 1981;<br>(7) Tortious Interference with Contract and Prospective Economic Advantage;<br>(8) Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.); and<br>(9) Declaratory and Injunctive Relief.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs allege as follows:

## I. PARTIES

1. Plaintiff IranProud, LLC is a Washington limited liability company. It registered the iranproud.com domain name with GoDaddy in 2005, contributed its domain-name assets to the IranProud enterprise through the Proud Holding LLC joint venture formed in 2013, and holds and asserts its interests in the domain names at issue.

2. Plaintiff Proud Holding Inc. is a corporation organized under the laws of the Province of Ontario, Canada, with its office in Richmond Hill, Ontario. It holds the IRANPROUD mark, which has been used continuously in United States commerce since February 2006, and acts as the IranProud enterprise's advertising-revenue agent.

3. Plaintiff Proud Holding LLC is a Colorado limited liability company with its principal office at 5925 East Evans Avenue, Suite 217, Denver, Colorado. Formed in 2013 as the joint venture of IranProud, LLC and Nationwide Telecom, Proud Holding LLC holds the domain-name, hardware, and software assets of the IranProud platform, has paid for the registration and renewal of the Domains since 2015, and holds the beneficial interest in the domain names at issue.

4. Plaintiff Nationwide Telecom Inc. is a California corporation with its principal office at 23016 Del Lago Drive, Laguna Hills, California, within this District. It is affiliated with, and under common management with, Nationwide Telecom, Inc., a Colorado corporation, with which it holds joint and mutual interests

in the IranProud enterprise; it holds interests in, and provides services supporting, the IranProud platform and the domain names at issue.

5. The six domain names at issue are registered under GoDaddy Account No. 10177662. That Account is held in the name of Mehran Kazemeiny, who opened and has maintained it as agent and nominee for, and for the benefit of, Plaintiffs and the IranProud enterprise, using the enterprise's own contact address (ads@iranproud.com) as the Account's address of record (Exhibit 5). Plaintiffs, together and through their principals, agents, and affiliates, have at all relevant times owned, controlled, operated, and paid for the Domains and the Account, are their beneficial owners, and hold the immediate right to possession of the Domains.

6. Defendant GoDaddy.com, LLC is a Delaware limited liability company with its principal place of business at 2155 East GoDaddy Way, Tempe, Arizona 85284. It is the world's largest domain name registrar and conducts continuous and systematic business in this District, serving millions of California customers.

7. Defendant GoDaddy.com, Inc. is an Arizona corporation (formed January 13, 1997) that previously operated the GoDaddy domain-registration business and is sued individually and as predecessor-in-interest to GoDaddy.com, LLC. GoDaddy.com, LLC and GoDaddy.com, Inc. are referred to collectively as "GoDaddy."

8. Plaintiffs are unaware of the true names and capacities of Defendants sued as DOES 1 through 10, inclusive, and sue them by fictitious names. Plaintiffs will amend to allege their true names and capacities when ascertained.

## II. JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises in part under 42 U.S.C. § 1981, and supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367(a), which arise from the same case or controversy.

10. This Court has personal jurisdiction over GoDaddy, which conducts continuous and systematic business in California and in this District, contracts with and serves customers residing in this District, and directed the conduct alleged herein at Plaintiffs' California operations. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and harm giving rise to the claims occurred in this District, where the IranProud platform's California operations and audience were centered and where the injury from the takedown was suffered.

11. No enforceable forum-selection, arbitration, or jury-waiver provision requires a different forum. As alleged below, Plaintiffs never knowingly assented to any Universal Terms of Service containing those provisions; GoDaddy obtained no knowing agreement to those terms, which were presented, if at all, only through a non-functioning hyperlink and were never triggered by the Account's automatic

renewals; such provisions are procedurally and substantively unconscionable as imposed here; and GoDaddy has in any event waived any right to compel arbitration by its litigation conduct. Any forum-selection provision, even if enforceable, would at most support transfer under 28 U.S.C. § 1404(a), not dismissal, and is outweighed here by the federal civil-rights claim and California's interest in adjudicating the claims of its residents and a California plaintiff.

12. A prior action arising from the same takedown, Andia, Inc., et al. v. GoDaddy.com, LLC, was brought in the Superior Court of California, County of Los Angeles (No. 23VECV04809) by Plaintiffs Proud Holding Inc., Proud Holding LLC, and Nationwide Telecom Inc., together with their affiliates Andia, Inc., Nationwide Telecom, Inc. (a Colorado corporation), Nikoo Inc., and Omid S. Ahmadabadi (the "Prior Action"). The Prior Action was dismissed without prejudice on forum-selection grounds (Hon. Shirley K. Watkins) by minute order entered August 8, 2024. The plaintiffs' appeal (Cal. Ct. App., Second Dist., No. B341488) was dismissed on January 14, 2025, and remittitur issued on March 19, 2025. No claim was adjudicated on the merits in the trial court or on appeal, and neither the dismissal nor the remittitur has any preclusive effect on the claims alleged here. A true and correct copy of the minute order is attached as Exhibit 10.

13. The Prior Action was commenced in October 2023, within days of the October 12, 2023 takedown, and gave GoDaddy timely notice of the identical claims

and facts alleged here. GoDaddy appeared, litigated the merits, and suffered no prejudice. Plaintiff IranProud, LLC, although not named in the Prior Action, is a member of the same IranProud enterprise, holds its interests in the Domains in common with the other Plaintiffs, and asserts the identical claims arising from the identical facts of which GoDaddy had full and timely notice. All applicable limitations periods were therefore equitably tolled, as to each Plaintiff, during the pendency of the Prior Action and the ensuing appeal, from the filing of the Prior Action through the issuance of the remittitur on March 19, 2025, and this action is timely.

14. GoDaddy has waived any right to compel arbitration of the claims alleged herein. For approximately ten months in the Prior Action, GoDaddy litigated the merits — filing successive demurrers, motions to strike, evidentiary objections, and merits declarations — and affirmatively sought dismissal in favor of court litigation elsewhere, never moving to compel arbitration. GoDaddy thereby acted inconsistently with any right to arbitrate.

## III. GENERAL ALLEGATIONS

15. IranProud is a video-distribution platform serving the worldwide Persian-speaking community. It distributes content produced in Iran by Iranian production companies and broadcasters and has operated continuously as a United States business. The iranproud.com domain name was registered through GoDaddy

by IranProud, LLC on or about November 2, 2005, and the IranProud enterprise has operated the platform continuously since.

16. Each GoDaddy domain registration of that era was a simple exchange: the customer supplied an email address, contact information, and payment, and GoDaddy delivered the domain-name registration. GoDaddy's checkout required nothing more. It did not require the customer to sign, initial, receive, or even view any terms-of-service agreement; it presented no terms on the screen; and it did not condition the purchase on assent to any arbitration, forum-selection, jury-waiver, or limitation-of-liability provision. The bargain was a fee for a domain — and nothing else.

17. GoDaddy's own order-confirmation emails of that era confirm the point. They contained only a bare hyperlink labeled "Legal Agreement," with no accompanying text advising the customer that completing the purchase would bind the customer to any terms. That hyperlink — including in GoDaddy's July 9, 2008 order confirmation sent from sales@godaddy.com (Exhibit 6) — resolves to a GoDaddy URL (https://www.godaddy.com/gdshop/legal_agreements/show_doc.asp) that returns a "404" page-not-found error and displays no agreement whatsoever. A true and correct screenshot of that dead link, captured December 9, 2023, is attached as Exhibit 7. GoDaddy maintains no public archive of the historical agreements those

links purported to reference, and its legal-resources pages preserve no prior versions. The only “agreement” GoDaddy ever offered the customer displayed nothing when clicked.

18. This was GoDaddy’s uniform practice, not a peculiarity of a single transaction. On other GoDaddy accounts — including accounts held by companies under common control with Plaintiffs’ principals — domain purchases in 2008, 2009, and 2010 were likewise made on nothing more than an email address and payment; the purchasers were never required to verify their identity, never received the “legal agreement” referenced in their receipts, and never encountered the term “Universal Terms of Service” or any request to accept one. The “Legal Agreement” hyperlink in each of those receipts displayed no content when clicked and still displays none. Plaintiffs’ experience with the IranProud domains was identical.

19. On December 7, 2011, in connection with the sale of the GoDaddy business to private-equity ownership, GoDaddy.com, Inc. ceased active operation and its business, assets, and liabilities passed to GoDaddy.com, LLC, a newly formed Delaware limited liability company (Exhibit 8). GoDaddy gave Plaintiffs no individual notice of this change of counterparty and, on information and belief, gave none to its existing customers. It continued to operate under the identical “GoDaddy” brand, website, and customer interface, so that existing customers had no reason to

know the entity on the other side of their account had changed, and continued to deal with Plaintiffs through the same Account No. 10177662 without interruption.

20. The IranProud enterprise and its principals have continuously held, operated, and paid for the Domains and GoDaddy Account No. 10177662, and the registrar counterparty remained GoDaddy — operating under the same brand, website, and account — throughout. The IranProud domains iranproud.com, iranproud.net, iranproud.org, iranproud2.com, iranproud2.net, and iranproud2.org (the "Domains") were registered and maintained on that Account, and the September 17, 2017 registrations of iranproud2.com, iranproud2.net, and iranproud2.org generated GoDaddy receipt no. 1190351325 (Exhibit 5). Registrations and renewals on the Account were effected on a recurring, automatically-renewing basis that required no review or acceptance of any terms. At no point was the customer of record required to review, sign, or knowingly assent to any "Universal Terms of Service"; no such terms were ever separately presented or sent; and the only "Legal Agreement" hyperlink GoDaddy ever provided displayed no content when clicked.

21. GoDaddy now contends that a "Universal Terms of Service" — containing a mandatory arbitration provision, a class-action waiver, a jury-trial waiver, an out-of-state exclusive-forum provision, and a limitation of liability capping recovery at fees paid — governs this dispute. Plaintiffs never received individual notice of those terms and never knowingly assented to them. No checkout

or renewal screen conspicuously disclosed that the counterparty had changed or that materially new dispute-resolution and liability terms were being introduced; the hyperlink by which GoDaddy purported to present those terms displayed no accessible agreement; and the Account's automatic renewals required no agreement at all. The restrictive terms GoDaddy now invokes were never part of the parties' bargain, were never validly formed, and are in any event unconscionable and unenforceable as applied here.

22. The Domains were the exclusive channel through which the IRANPROUD brand — valued at no less than $5,000,000 as of 2022 — reached its audience of millions of users. Approximately $300,000 was invested in digital marketing building brand equity in the Domains. Plaintiffs owned, controlled, and had the immediate and exclusive right to possess and direct each of the Domains.

23. On October 12, 2023, without any prior notice, GoDaddy cancelled every product on the Account and locked the Account. The only explanation GoDaddy ever gave was a form email sent at 11:22 p.m. that evening — written as "The Office of the CEO | GoDaddy" from ceoteam@godaddy.com, in reply to the account holder's written protest — stating that the account "does not appear to be in compliance with applicable sanctions regulations, including from the Office of Foreign Assets Control (OFAC) of the U.S. Department of Treasury," announcing that "your products have been cancelled and the GoDaddy account has been locked

from future access," and directing the customer to a general OFAC telephone number. A true and correct copy of that email is attached as Exhibit 1.

24. The October 12, 2023 notice identified no OFAC order, directive, finding, license denial, or guidance; no Specially Designated National (SDN) listing; no court order; and no law-enforcement request. On information and belief, none existed, and OFAC has never taken any action or made any request of GoDaddy concerning the Domains or Plaintiffs. Neither Plaintiffs nor their principals are, or were, listed on OFAC's SDN List or subject to blocking under any sanctions program — a fact GoDaddy could and should have verified before acting.

25. On or about October 13–15, 2023, GoDaddy placed all of the Domains in "parked" status — public DNS records confirm nameserver changes to GoDaddy parking servers (domaincontrol.com) for each Domain on October 14–15, 2023 — taking the IranProud platform offline, and deleted the account credentials (Exhibit 4). GoDaddy also re-pointed the account's recovery email address to an internal "@godaddy.com" address, so that even GoDaddy's own password-reset function directed recovery to GoDaddy itself, eliminating any ability to reset credentials, manage, renew, or transfer the Domains (Exhibit 9). Re-pointing the recovery email and refusing transfer were not acts required or permitted by any sanctions authority.

26. On information and belief, upon parking the Domains GoDaddy redirected each of them to servers under GoDaddy's own control and monetized or

was positioned to monetize the resulting traffic through parking or advertising, converting Plaintiffs' property to GoDaddy's own use and benefit while denying Plaintiffs any access to or benefit from the Domains.

27. The account holder protested in writing twice within hours — first by email on October 12, 2023 at 9:09 p.m., immediately upon discovering the cancellation and before GoDaddy's 11:22 p.m. email, and again on October 13, 2023 at 7:32 a.m. (Mountain) — demanding the basis for the action and restoration of service, and advising that the operation was a United States business, owned by United States citizens and operated from a Nationwide Telecom office in Tarzana, California, with no OFAC forfeiture order against it (Exhibits 2 and 3). GoDaddy never substantively responded and never identified any specific OFAC or legal basis.

28. On November 30, 2023 — after Plaintiffs filed suit and served GoDaddy — GoDaddy quietly resumed DNS resolution for iranproud.com only, without restoring account access and while leaving the remaining Domains parked. The partial restoration occurred without any change in any sanctions circumstance, confirming that no sanctions impediment required the takedown.

29. The operative registration agreements enumerate the circumstances in which GoDaddy may suspend or cancel services — including compliance with court orders, laws, or government rules; requests of law enforcement; and dispute-

resolution processes. None existed. GoDaddy's own agreements also contemplate notice; none was given.

30. As a direct result, Plaintiffs lost the operation of the platform, committed advertising inventory, audience goodwill accumulated over eighteen years, and the ability to mitigate by transferring the Domains to another registrar.

31. Plaintiffs are owned and controlled by individuals of Iranian (Persian) ancestry and ethnicity, and the IranProud enterprise exists to serve the Persian-speaking community. Plaintiffs accordingly possess, and are imputed with, a Persian racial and ethnic identity for purposes of the civil-rights laws.

32. The identical Iranian-produced content distributed through the IranProud platform is and was simultaneously distributed to United States audiences by other platforms — including YouTube (Google LLC) and Facebook/Meta Platforms, Inc. — whose services were not cancelled on purported sanctions grounds. On information and belief, GoDaddy has not cancelled the services of similarly situated customers that are not Persian-owned, including customers distributing identical or comparable Iran-sourced content.

**COUNT ONE — BREACH OF CONTRACT**

33. Plaintiffs incorporate the foregoing paragraphs.

34. Valid contracts existed between GoDaddy and the customer of record on Account No. 10177662, acting as agent and nominee for Plaintiffs — the registration

agreements associated with each registration and renewal — under which GoDaddy agreed to provide domain registration and related services, including continued registration, account access, delivery of account communications to the customer's own contact address, and the right to transfer the Domains, in exchange for fees, all of which were paid.

35. GoDaddy materially breached those contracts by cancelling the services, parking the Domains, deleting account access, seizing the account's recovery email, refusing to permit transfer, and failing to give notice, where no contractually enumerated ground for such action existed.

36. As a direct and proximate result, Plaintiffs suffered damages according to proof at trial, including lost profits, lost advertising commitments, and destruction of brand value.

**COUNT TWO — BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

37. Plaintiffs incorporate the foregoing paragraphs. This count is pleaded as a contract-based claim.

38. Every contract contains an implied covenant of good faith and fair dealing that neither party will do anything to deprive the other of the reasonably expected benefits of the agreement, and that any discretion conferred by the contract will be exercised in good faith and not in an objectively unreasonable manner.

39. To the extent GoDaddy claims its actions were authorized by "sole discretion" or "sole and absolute discretion" provisions, GoDaddy exercised that discretion in bad faith and unreasonably: it acted on no OFAC order, directive, listing, court order, or law-enforcement request; it conducted no investigation; it gave no notice; it provided no explanation upon inquiry; it seized the account's recovery email and deleted access, foreclosing any cure or mitigation; and it partially reversed itself only after being sued, without any change in circumstance. A discretionary suspension clause does not authorize suspension on a false or non-existent basis.

40. GoDaddy's bad-faith and objectively unreasonable exercise of discretion deprived Plaintiffs of the essential benefit of the contracts — continuous registration and control of the Domains — causing damages according to proof at trial.

**COUNT THREE — CONVERSION**

41. Plaintiffs incorporate the foregoing paragraphs.

42. Each of the Domains is intangible personal property in which Plaintiffs held ownership and the immediate right to possession and control.

43. GoDaddy wrongfully exercised dominion over and interfered with Plaintiffs' property rights in each Domain — by locking the account, parking the Domains, deleting the credentials, re-pointing the account recovery email to itself,

redirecting the Domains to GoDaddy's own servers, refusing to permit transfer, and, on information and belief, monetizing the Domains for its own benefit — in a manner inconsistent with and in defiance of Plaintiffs' rights. Each of the six Domains constitutes a separate and independent act of conversion.

44. GoDaddy's exercise of dominion was neither authorized nor privileged. No OFAC order, court order, or law-enforcement request required or permitted it, and Plaintiffs did not consent. Conversion does not depend on GoDaddy's motive; even a genuine but mistaken belief in an OFAC obligation would not excuse the wrongful disposition of Plaintiffs' property.

45. As a direct and proximate result, Plaintiffs were deprived of the use, control, and value of each Domain and suffered damages according to proof at trial, including the value of each Domain and lost profits. GoDaddy's conduct was malicious, oppressive, and fraudulent, warranting punitive damages.

**COUNT FOUR — FRAUDULENT MISREPRESENTATION**

46. Plaintiffs incorporate the foregoing paragraphs.

47. On October 12, 2023 at 11:22 p.m., GoDaddy's "Office of the CEO," writing from ceoteam@godaddy.com, represented to the account contact address (Exhibit 1), as statements of fact, that the account "does not appear to be in compliance with applicable sanctions regulations, including from the Office of

Foreign Assets Control (OFAC),” and that “[a]s such your products have been cancelled.”

48. Those representations were false. No OFAC regulation, order, directive, listing, or determination applied to the account, the Domains, or Plaintiffs; no sanctions non-compliance existed; and GoDaddy possessed no reasonable basis for the statements. The falsity is confirmed by GoDaddy’s failure to identify any regulation when asked (Exhibits 1–3) and its restoration of iranproud.com on November 30, 2023 without any change in any sanctions circumstance (Exhibit 4).

49. GoDaddy made the representation knowing it was false or with reckless disregard for its truth, intending that the recipient rely by acquiescing in the cancellation and abandoning the Domains rather than demanding restoration or transfer. Plaintiffs reasonably relied, including by directing months of effort toward OFAC inquiry rather than immediate transfer remedies, and were damaged according to proof at trial. GoDaddy’s conduct was malicious, oppressive, and fraudulent, warranting punitive damages.

**COUNT FIVE — FRAUDULENT CONCEALMENT (IN THE ALTERNATIVE)**

50. Plaintiffs incorporate the foregoing paragraphs.

51. GoDaddy concealed material facts: that the entity with which Plaintiffs had dealt since 2005 had been replaced by a different counterparty in December

2011; that materially new dispute-resolution and liability terms had been introduced into the relationship; and that the historical legal agreements referenced in GoDaddy's own order confirmations no longer existed at their published locations. GoDaddy also concealed the absence of any genuine OFAC basis for the suspension by re-pointing the account recovery email to itself, eliminating Plaintiffs' ability to discover and contest the true basis for the action.

52. GoDaddy had a duty to disclose because it had exclusive knowledge of these facts, actively concealed them while operating under an identical brand and interface, and made partial representations that conveyed a false impression of continuity. Plaintiffs first discovered these facts in or about 2024, in the course of the Prior Action, when GoDaddy produced the versions of its Universal Terms of Service it contends govern; despite reasonable diligence, Plaintiffs could not have discovered them earlier, because GoDaddy's customer-facing communications were unchanged across the 2011 transfer, the published sources of its historical terms returned no content, and nothing in the checkout or renewal process disclosed the change. Plaintiffs justifiably relied and were damaged; GoDaddy's conduct warrants punitive damages.

**COUNT SIX — VIOLATION OF 42 U.S.C. § 1981**

53. Plaintiffs incorporate the foregoing paragraphs.

54. Section 1981 guarantees to all persons the same right to make and enforce contracts as is enjoyed by white citizens, and protects persons of Iranian (Persian) ancestry and ethnicity, and entities bearing an imputed Persian identity, against intentional discrimination, including by private actors. Plaintiffs complain of discrimination because of their Persian ancestry and ethnic characteristics — not because they are "from Iran" or on account of national origin, citizenship, or United States foreign policy.

55. GoDaddy intentionally terminated and impaired Plaintiffs' contractual relationships because of Plaintiffs' Persian ancestry and ethnicity and the platform's identity as a Persian-owned business serving the Persian community. GoDaddy's asserted justification — unspecified "applicable sanctions regulations" — was a pretext: no OFAC order, directive, listing, finding, or inquiry existed; GoDaddy identified none upon request; GoDaddy applied a form "OFAC" notice rather than its standard suspension process requiring an actual legal request; GoDaddy partially restored service weeks later without any change in any sanctions circumstance; and GoDaddy took no comparable action against similarly situated non-Persian customers, including customers distributing identical Iran-sourced content.

56. GoDaddy did not act in good faith pursuant to, or in reliance on, any regulation, instruction, or direction issued under the International Emergency Economic Powers Act or any OFAC sanctions program. GoDaddy identified no such

regulation; conducted no investigation; sought no guidance from OFAC; refused to respond to Plaintiffs' written protests; verified no SDN listing (there was none); maintained no consistently applied compliance policy that it followed as to Plaintiffs; and reversed its action in material part on November 30, 2023 without any change in any sanctions circumstance. GoDaddy's re-pointing of the recovery email and refusal to permit transfer were not acts taken under IEEPA and fall outside any statutory good-faith shield.

57. But for Plaintiffs' Persian ancestry, ethnicity, and identity, GoDaddy would not have cancelled Plaintiffs' services, locked the account, parked the Domains, and refused transfer. As a direct and proximate result, Plaintiffs suffered damages according to proof at trial. GoDaddy acted with malice or reckless indifference to Plaintiffs' federally protected rights, warranting punitive damages. Plaintiffs are entitled to reasonable attorneys' fees under 42 U.S.C. § 1988(b).

**COUNT SEVEN — TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE**

58. Plaintiffs incorporate the foregoing paragraphs.

59. Plaintiffs had valid contractual relationships and business expectancies — with subscribers, advertisers, content licensors, distribution partners, and viewers — conducted through and dependent upon the Domains and the IranProud platform.

60. GoDaddy knew of these relationships and expectancies: the Domains hosted an operating commercial video platform with an audience of millions and committed advertising inventory, as GoDaddy's own records and the parking of active, revenue-generating domains reflect.

61. By taking the platform offline, parking the Domains, and refusing transfer without any legitimate justification, GoDaddy intentionally interfered with and caused the disruption or termination of those relationships and expectancies.

62. GoDaddy's interference was improper and without justification. No OFAC order or other legal basis existed, and the false OFAC pretext negates any claim of good-faith justification. As a direct and proximate result, Plaintiffs suffered damages according to proof at trial. GoDaddy's conduct was malicious and oppressive, warranting punitive damages.

**COUNT EIGHT — VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (BUS. & PROF. CODE § 17200 et seq.)**

63. Plaintiffs incorporate the foregoing paragraphs.

64. GoDaddy engaged in unlawful, unfair, and fraudulent business acts and practices within the meaning of Business and Professions Code § 17200.

65. Unlawful: GoDaddy's conduct violated 42 U.S.C. § 1981, breached its registration agreements, converted Plaintiffs' property, and contravened the transfer

and suspension standards applicable to ICANN-accredited registrars, each of which serves as a predicate unlawful act.

66. Unfair: invoking a non-existent OFAC obligation to lock six revenue-generating domains of a United States enterprise owned by persons of Persian descent, parking those domains for GoDaddy's own benefit, and seizing the customer's recovery email to foreclose any recovery inflicted substantial injury on Plaintiffs that is not outweighed by any countervailing benefit and that Plaintiffs could not reasonably have avoided.

67. Fraudulent: GoDaddy's false representation that the suspension was required by "applicable sanctions regulations, including OFAC" was likely to deceive members of the public.

68. Plaintiffs suffered injury in fact and lost money and property, including lost revenue and the value of the Domains. Plaintiffs are entitled to restitution — including disgorgement of any revenues GoDaddy earned or was positioned to earn from parking or monetizing the Domains — and to injunctive relief under Business and Professions Code § 17203, including an order restoring access and permitting transfer of the Domains.

**COUNT NINE — DECLARATORY AND INJUNCTIVE RELIEF (28 U.S.C. §§ 2201–2202)**

69. Plaintiffs incorporate the foregoing paragraphs.

70. An actual, justiciable controversy exists concerning the parties' rights: Plaintiffs contend, and GoDaddy disputes, that no OFAC or other legal obligation ever required the suspension; that Plaintiffs are entitled to full account access and to transfer each of the Domains to a registrar of their choice; and that the arbitration, jury-waiver, forum, and liability-cap provisions were never validly formed and are unconscionable and unenforceable.

71. Plaintiffs are entitled to a declaration of those rights under 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 57, and to preliminary and permanent injunctive relief compelling GoDaddy to restore account access, remove all locks and parked status, and permit transfer of the Domains. The Domains are unique; their continued withholding inflicts irreparable harm not remediable by damages alone.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against GoDaddy as follows: (a) compensatory damages according to proof at trial, including per-Domain conversion damages; (b) restitution and disgorgement of all revenues GoDaddy earned or was positioned to earn from parking or monetizing the Domains; (c) punitive damages on the conversion, fraudulent-misrepresentation, fraudulent-concealment, § 1981, and tortious-interference counts; (d) a declaration of Plaintiffs' rights to account access and transfer of the Domains and of the unenforceability of the arbitration, jury-waiver, forum, and liability-cap provisions, and preliminary and permanent

injunctive relief; (e) pre- and post-judgment interest; (f) taxable costs and attorneys' fees under 42 U.S.C. § 1988(b), Business and Professions Code § 17203, and any applicable contract or statute; and (g) such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand trial by jury on all issues so triable.

DATED: October ____, 2026
Respectfully submitted,
JUSTICE LAW GROUP

By: ________________________________
Mario Iskander, Esq.
Attorneys for Plaintiffs

**INDEX OF EXHIBITS**

Exhibit 1 — GoDaddy cancellation notice (ceoteam@godaddy.com), Oct. 12, 2023. Exhibit 2 — Account holder's first written response, Oct. 12, 2023. Exhibit 3 — Second written response, Oct. 13, 2023. Exhibit 4 — CompleteDNS domain-history reports for the six Domains (Oct. 14–15, 2023 parking; Nov. 30, 2023 partial restoration). Exhibit 5 — GoDaddy legal receipt no. 1190351325 (Acct. 10177662), Sept. 17, 2017. Exhibit 6 — GoDaddy order-confirmation email (sales@godaddy.com), July 9, 2008, with "Legal Agreement" hyperlink. Exhibit 7 — Screenshot of the GoDaddy legal-agreement URL returning a 404 error, Dec. 9,

2023. Exhibit 8 — Arizona Corporation Commission records (GoDaddy.com, Inc. and GoDaddy.com, LLC). Exhibit 9 — GoDaddy account-lock and password-reset screenshots (recovery email re-pointed to @godaddy.com). Exhibit 10 — LASC minute order, No. 23VECV04809, Aug. 8, 2024.